IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WARREN MORRIS,** | : | Civil Action No. 1:04-CV-2617 |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| **LORILLARD, ET AL.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

Plaintiff Warren Morris ("Morris") commenced this 42 U.S.C. §1983 action claiming that exposure to second-hand smoke has caused him to develop medical complications. (Doc. 1.) Presently before the court is a motion for summary judgment (Doc. 29) filed on behalf of Defendant Tennis. For the reasons set forth below, Defendant's motion will be granted.

**I. Statement of Facts**[1]

At all times relevant to this action, Morris was incarcerated at the State Correctional Institution at Rockview (SCI-Rockview). Effective December 2000, the Department of Corrections (DOC) instituted policy statement 1.1.7, which provides a smoke-free environment in each of its facilities by specifying permitted and prohibited smoking areas in each facility. (Doc. 32, at 3.) In May 2003, SCI-Rockview prohibited smoking in all buildings. (Doc. 30-4, at 2.) Smoking by inmates is permitted only on the outside walkways, outside in front of the buildings, or at designated outdoor areas. (Doc. 32, at 3.)

The DOC smoking policy was revised in June 2003, to provide that the bargaining-unit staff is prohibited from smoking in common areas and in inmate-housing units, but smoking is permitted in private offices, designated employee lounges or break areas, and designated outside areas. (Doc.

---

[1] In accordance with the standard or review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff. See infra Section II.

30-4, at 3.)

Morris began complaining of breathing complications at an emergency sick call on January 24, 2003. (Id. at 6.) He was short of breath and complained that he was coughing and his heart was racing. He stated that he lived on a smoking block and that he had these problems for two years. He also reported being under a lot of stress and indicated that he was not taking prescribed psychiatric medication. The examination revealed no coughing or wheezing and indicated that Morris was not in acute distress. Morris was told to complete some relaxation exercises, to take his medication, and sign up for sick call if he had any further problems.

Morris sought medical treatment four days later. He was diagnosed with an asthmatic episode and prescribed an inhaler. He was also added to the Asthma Chronic Care Clinic for regular follow-up. (Doc. 33, at 4; Doc. 30-9, at 7.)

Thereafter, he submitted a grievance dated January 31, 2003, alleging that he was having difficulty breathing. (Doc. 30-6, at 2-3.) The grievance officer responded by detailing the medical care Morris received that day. (Id. at 4.) He also informed Morris that the doctor would provide further direction to the nursing staff for plans of care for potential asthma cases. (Id.) His appeals were denied based on the conclusion that he was being adequately treated. (Id. at 6-7.)

On February 14, 2003, Morris again reported to the medical department complaining of breathing trouble and inquiring about the use of the inhaler. (Doc 30-9, at 8.) The examination revealed that his lungs were clear and that he was able to fully ventilate. He was also instructed on the proper use of the inhaler. At that time, the doctor recommended him for the non-smoking block. (Doc. 30-10, at 5.)

On February 25, 2003, Morris reported for a follow-up appointment for his asthma. He was

prescribed a new inhaler, which he was directed to use twice daily.  It was noted that a move to a non-smoking block was in process.  (Doc. 30-9, at 9.)

On March 16, 2003, Morris filed a grievance complaining that the "constant smoking" limited his ability to breathe and seeking to be moved to a non-smoking block immediately.  (Doc. 30-6, at 8.)  Morris's grievance was found to be without merit because he had been purchasing tobacco products, which barred Morris's move to a non-smoking block.  (Doc. 30-6, at 10.)  In order to be moved to the non-smoking block, "inmates cannot purchase tobacco for 30 days as a prelude to moving to B/A."  (Id.)  Morris was informed that his commissary purchases would be checked again on April 1, 2003.  (Id.)  He appealed the grievance claiming that he did not smoke, and that if he did, it should not influence his request to be moved to a non-smoking block because his health condition was caused by the constant smoking inside and outside his cell.  (Doc. 30-6, at 12.)  At that time, he was informed that if he had a defined "medical need to be moved to BA, [a non-smoking block], medical staff must advise unit staff and a move will be made."  (Id. at 13.)

Morris was seen for a medical follow-up on March 21, 2003.  He complained of difficulty breathing.  Review of use of the inhalers confirmed that he was using them correctly.  Later that month, he was reminded that one of the inhalers was to be used following an asthma attack while the other one was to be used twice a day.  (Doc. 30-6, at 17.)

He was moved to BA, the non-smoking block, on April 25, 2003.  (Id. at 14.)

Morris was continuously seen over the course of the next sixteen months and all indications were that his asthma condition was stable.  (Doc. 30-9, at 9-50; Doc. 30-10, at 6-19.)  In addition to his asthma, Morris occasionally complained of back and ankle pain.

In July 2004, Morris complained that he was coughing mucus and phlegm for the last month

with no relief. (Doc. 30-9, at 51.) His examination revealed no physical symptoms; i.e., discharge, redness, or enlarged lymph nodes. A strep-throat culture and blood tests were performed and he was prescribed medication. (Doc. 30-10, at 21.) At that time, he filed a grievance indicating that the exposure to smoke in his housing block was causing his problems and inquired about prescription medication carrying a "Do not take this product if you have asthma" warning. (Doc. 30-6, at 28.) He was advised that the medication was safe to take and that it was his choice whether to take or not take the medication. (Id. at 29.) He appealed to Defendant who informed Morris that "[i]f you feel there is too much risk in taking this medication, you may choose not to take it." (Id. at 31.)

Morris reported to the medical department on August 10, 2004, complaining of sputum production and loss of equilibrium, and requested a bottom bunk because of his back and ankle problems. (Id. at 40.) He was placed on sports, walking, and lifting restrictions and he was assigned a bottom bunk. (Doc. 30-10, at 21.)

Morris's next exam at the asthma clinic indicated that his lungs were clear and that he was to continue use of the inhalers. (Doc. 30-9, at 40.)

In September 2004, Morris filed a grievance complaining of his exposure to second-hand smoke. He indicated that he was moved to the CB non-smoking block from the BA non-smoking block due to increased incidents of smoking in that part of the prison. (Doc. 30-6, at 33-34.) In his grievance, Morris stated that there were inmates housed on the CB block who smoked and he reported experiencing increased asthmatic episodes. In reply, the grievance officer advised Morris that smoking is not permitted in any housing unit, but that inmates were breaking this rule and the prison was working to ensure that a non-smoking environment was maintained. (Id. at 35.) Morris was informed that all housing units and other institution buildings are designated as non-smoking

and that if inmates are smoking, such action would need to be referred to the unit staff so that corrective action could be taken. (Id. at 37.) Morris's final appeal was also denied. (Id. at 38.)

Later in the month, Morris filed another grievance alleging that a corrections officer was smoking inside the unit building at the BA block pass desk. (Doc. 30-6, at 44, 47.) He also reiterated his concerns about the lack of enforcement of the non-smoking policy. Investigation into the grievance revealed that the corrections officer was smoking in a designated area and that there was no evidence that the officer was smoking at the desk. (Id. at 49, 51, 52.)

On December 25, 2004, Morris filed another grievance requesting to be placed in a single cell. (Doc. 30-6, at 58.) He complained of the lack of enforcement of the non-smoking policy and his difficulty in being celled with smokers. His request for a single cell was denied and the Unit Manager was directed to assist him in being housed with a non-smoking cell partner. (Doc. 30-6, at 60.) Defendant upheld the decision on appeal as it was determined that Morris did not meet the criteria for single-cell placement. (Id. at 63-64.) He advised Morris that "[t]he institution provides single cells for certain inmates whom [sic] are in need of a single cell for documented medical, psychiatric, or behavior-related reasons. You do not fit into any of these categories at the present time." (Id. at 63.)

In January 2005, Morris complained that his mucus was brown and inquired as to whether second-hand smoke was causing his illness. He accused the physician's assistant of causing him pain and left without being treated.

A few months later, Morris was examined concerning right-elbow pain. He was placed on restricted sports, lifting, and stooping. A bottom bunk and non-smoking cellmate were recommended. (Doc. 30-10, at 25.)

Later examinations revealed that Morris's lungs were clear. Continued use of the inhalers was prescribed. On March 25, 2005, the examining physician noted in the medical records that Morris's "breathing was better in the new block - - less smoke exposure." (Doc. 30-9, at 45.)

At the end of March, he filed yet another grievance based upon the fact that upon his return from the county prison, he was housed with a smoker.[2] He indicated that he had more asthma attacks, headaches, eye irritations, and nose bleeds. He also complained of flagrant smoking and stated that his "medical records will reveal the results of your deliberate indifference." (Doc. 30-6, at 66.) In response, he was "encouraged" to work with his Unit Manager to assist him with any "bed assignment concerns that he may have." (Id. at 67.) He appealed to Defendant, who responded as follows:

> Your appeal provides no new information nor do you indicate what part, if any, of the Initial Review with which you disagree.
>
> You have been advised repeatedly that staff will make every effort to enforce the no-smoking rule in the housing units. At the present time you are in the RHU where tobacco products are not permitted; so you should not be experiencing any smoking-related problems. Upon your release from RHU you are encouraged to work with your Unit Manager to find a cell partner with whom you are compatible. Until you are released to population, however, these issues must be considered premature.

(Id. at 69.)

## II. Standard of Review

Summary judgment serves as a minimal but an important hurdle for litigants to overcome before presenting a claim to a jury. Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Such affirmative

---

[2] It is not clear why Morris was transferred to the county prison.

evidence--regardless of whether it is direct or circumstantial--must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)). Only if this burden is met can the cause of action proceed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see FED. R. CIV. P. 56(c), (e).

## III. Discussion

The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on a prisoner by acting with "deliberate indifference" to the prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). In Helling v. McKinney, 509 U.S. 25, 35 (1993), the Supreme Court held that an Eighth Amendment claim could be based upon possible future harm to health, as well as present harm, arising from exposure to environmental tobacco smoke ("ETS"). The test for determining deliberate indifference based on exposure to ETS has both objective and subjective components. Helling, 509 U.S. at 35 (1993).

The objective component requires the injury be serious, see Hudson v. McMillian, 503 U.S. 1, 8-9 (1992), and the subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. See Wilson v. Seiter, 501 U.S. 294, 302-03 (1991). In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Id. Exposure to ETS is not an objectively serious injury per se. Id. at 34-35.

Subjectively, a plaintiff must prove that the defendant was deliberately indifferent to his serious medical needs. See Estelle, 429 U.S. 97, 106 (1976). To be found deliberately indifferent,

7

the official must know that the inmate faces a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  In the context of an inmate's "second-hand smoke" claim, a plaintiff must establish that he has a serious medical need for a smoke-free environment, <u>see</u> <u>Hunt v. Reynolds</u>, 974 F.2d 734, 735 (6th Cir. 1992), or that regardless of health, the level of ETS in the prison creates an unreasonable risk of serious damage to his future health.  See <u>Helling</u>, 509 U.S. at 35-36.  "[T]he adoption of a smoking policy . . . will bear heavily on the inquiry into deliberate indifference."  <u>Id.</u> at 36.

     The undisputed facts do not establish a constitutional violation.  "Prison officials all over the country have struggled to accommodate the growing evidence that ETS is harmful and may subject them to liability."  <u>Oliver v. Deen</u>, 77 F.3d 156, 157 (7th Cir. 1996).  Effective December 2000, the DOC instituted policy statement 1.1.7, which provides a smoke-free environment in each of its facilities by specifying permitted and prohibited smoking areas in each facility.  (Doc. 32, at 3.)  In May 2003, SCI-Rockview prohibited smoking in all buildings.  (Doc. 30-4, at 2.)  All indications are that the prison authorities' current attitudes and conduct reflect "zero tolerance" for smoking in their facilities.  As noted above, adoption of the no-smoking policy bears heavily on the inquiry into deliberate indifference.  Imperfect enforcement of the policy does not equate to deliberate indifference.  See <u>Franklin v. District of Columbia</u>, 163 F.3d 625, 636 (D.C. Cir. 1998).

     Moreover, the evidence submitted by Defendant indicates that he was not deliberately indifferent.  The above-detailed chronology of Morris's visits to the medical department and the Asthma Chronic Care Clinic establishes that Morris received constant medical attention to address his concerns.  His medical problems were diligently followed, his every complaint was addressed, his needs were met, and he was regularly instructed concerning his treatment regimen.  Further, the

number of moves to various cell blocks that housed only nonsmokers displays that officials continuously and tirelessly worked to provide Morris with a smoke-free environment. Accordingly, Defendant's motion for summary judgment will be granted.

An appropriate Order will issue.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WARREN MORRIS,** | : | Civil Action No. 1:04-CV-2617 |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| **LORILLARD, ET AL.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, this 22nd day of September, 2006, upon consideration of Defendant's motion for summary judgment (Doc. 29), and in accordance with the foregoing memorandum, it is hereby **ORDERED** that:

1. Defendant's motion (Doc. 29) is GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendant and against plaintiff.

3. The Clerk of Court is further directed to CLOSE this case.

4. Any appeal from this order will be DEEMED frivolous, not taken in good faith, and lacking in probable cause.

s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
